IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FARRAKHAN BEY, #153770
              Plaintiff      :

              v.      :  CIVIL ACTION NO. L-07-22

WARDEN      :
              Defendant

**MEMORANDUM**

This 42 U.S.C. § 1983 civil rights action was filed by Plaintiff, Farrakhan Bey, a Maryland Division of Corrections ("DOC") inmate. In his complaint, Bey claims that (i) his prison account has been mishandled; (ii) he has been on administrative segregation since August 31, 2006; (iii) the Maryland House of Correction at Jessup ("MHCJ") has been on lock-down due to the murder of a correctional officer; and (iv) while at MHCJ, he was denied recreation, evaluation by a classification team, and placement in general population status.

Now pending is Defendant's Motion to Dismiss or in the Alternative, Motion for Summary Judgment, and Bey's opposition thereto. The issues have been fully briefed and Plaintiff has been afforded a full opportunity to substantiate his claim. No hearing is necessary. In a separate order, the Court will grant Plaintiff's motion to proceed in forma pauperis and will grant Defendant's motion for summary judgment, finding that Plaintiff has failed to demonstrate any injury resulting from his conditions of confinement.

**I.    Motion for Summary Judgment**

    **A.    Standard of review**

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial).  Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party.  See Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

**B.     Tampering with Plaintiff's Prison Account**

Plaintiff believes monies have been wrongfully taken from his prison account and placed in his reserve account[1] or used to satisfy filing fee assessments to the courts as required pursuant to the Prison Litigation Reform Act ("PLRA").  Review of Plaintiff's correspondence with former MHCJ Warden Gary Hornbaker suggests that Plaintiff incorrectly believes he has thousands of dollars in his account.

Defendant does not provide a summary of Plaintiff's prison account statements, precluding a fact-based finding as to whether his accounts have been properly handled.  Such a determination need not be made, however, because the allegations at best amount to a prisoner property claim.  Such a claim is not cognizable in a civil rights action if sufficient due process is afforded to a prisoner by way of an adequate post-deprivation remedy.  See Parratt v. Taylor, 451 U.S. 527, 542-44 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986).  The right to seek damages and injunctive relief to correct any misappropriation of prisoner funds in Maryland courts, available

---

[1] A reserve account operates as a "savings account," providing Maryland prisoners with at least $25.00 at the time of their release from incarceration.

to Plaintiff, constitutes an adequate post-deprivation remedy.[2]  See Juncker v. Tinney, 549 F. Supp. 574, 579 (D. Md. 1982).[3]

### C.    Administrative Segregation Status

Plaintiff was removed from medical administrative segregation and assigned to "regular" administrative status on April 11, 2006.  From that time until his transfer to North Branch Correctional Institution ("NBCI") in March of 2007, he received monthly classification reviews. Plaintiff presents no evidence to the contrary.  Thus, he has failed to establish that he currently is deprived of any due process right to such review.

### D.    Lock-Down Status and Conditions of Confinement

Long-term segregation, if imposing an atypical and significant hardship in the context of ordinary prison life, may constitute a violation of a prisoner's liberty interest.[4]  Maryland prison officials have long guarded against the violation of such liberty interest, as evidenced by regulations requiring periodic classification review for prisoners on segregation. Records here reveal that Plaintiff, who suffers severe mental health problems, was kept on long-term segregation because he is unable to adjust to living in the general prison population.  Plaintiff's status has been regularly reviewed and any requests for mental health intervention have received prompt response.  Nothing more is constitutionally required.

In his affidavit, Defendant acknowledges a lock-down was instituted at MHCJ beginning

---

[2] Plaintiff may avail himself of remedies under the Maryland Tort Claims Act, Md. Code Ann., State Government article, § 12-101 et seq., and through the Inmate Grievance Office ("IGO").

[3] Although Juncker dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post-deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given Juncker's reliance on Parratt in dismissing the plaintiff's due process claim.

[4]     See Sandin v. Conner, 515 U.S. 472 (1995).

July 25, 2006, following the murder of a correctional officer. At the beginning of the lock-down, no out-of-cell recreation was permitted. By Thanksgiving, prisoners were permitted increased access to showers, visits, phone calls and washers and dryers, although group recreation remained banned. MHCJ was closed in March of 2007, at which time Plaintiff was transferred to NBCI. At the time of his transfer, Plaintiff did not report any medical problems allegedly incurred as a result of the lock-down. Absent injury, he has failed to state a cognizable federal civil rights claim.

## II.     Conclusion

For the foregoing reasons, the Court will, by separate Order:

(i)     GRANT Defendant's Motion for Summary Judgment;

(ii)    CLOSE this case; and

(iii)   DIRECT the Clerk to MAIL a copy of the Memorandum and Order to Plaintiff and PROVIDE same to counsel of record.

Dated this 29th day of October, 2007.

_____/s/_____
Benson Everett Legg
Chief Judge